<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

DAMIEN FREE,                                             :

                                         :        Civil Action No. 13-6023 (MAS)

                                :

                  Plaintiff,     :

                                :

                    v.         :        **OPINION**

                                :

WARDEN CHARLES ELLIS, et al.,     :

                                :

                  Defendants.   :

**APPEARANCES:**

        DAMIEN FREE, Plaintiff <u>pro se</u>
        #31497
        Passaic County Jail
        11 Marshall Street, 3 Cell #41
        Passaic, New Jersey 07505

**SHIPP**, District Judge

Plaintiff, Damien Free, a state inmate confined at the Passaic County Jail in Paterson, New Jersey, at the time he submitted this Complaint for filing, seeks to bring this action *in forma pauperis*. Based on Plaintiff's affidavit of indigence, the Court will grant Plaintiff's application to proceed pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to re-open this action and file the Complaint accordingly.

At this time, the Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief

from a defendant who is immune from such relief. For the reasons set forth below, the Court will allow the Complaint to proceed in part.

## I. BACKGROUND

Plaintiff, Damien Free ("Plaintiff"), brings this civil action, pursuant to 42 U.S.C. § 1983, against the following Defendants: Charles Ellis, Warden at the Mercer County Correction Center ("MCCC"); Linda Rogers, Supervisor of Program Services at MCCC; Sergeant Christopher Estwan; Sergeant Jimmy Creighton; Patricia Hundly, Supervisor of MCCC Medical Department; Sergeant Miszak; Sergeant Walker; and Area Officer C. Frascella. (ECF No. 1, Complaint, Caption, ¶¶ 4b-f.) The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of Plaintiff's allegations.

Plaintiff alleges that Defendants Rogers and Ellis denied Plaintiff access to the courts by not allowing Plaintiff access to the law library, case law, laptop computer or a person trained as a paralegal in preparation for his trial, from October 5, 2011 through November 6, 2012. (*Id.*, ¶¶ 4b, 4c, and "Statement of Claims" at ¶¶7-11.) Plaintiff also alleges that Defendant Rogers did not allow Plaintiff to attend religious services from August 4, 2011 through November 7, 2012. (*Id.* at ¶ 11.)

Plaintiff next alleges that, on August 29, 2012, his cell-mate broke the sprinkler head in Cell #14, causing the cell to flood. Defendant Sgt. Estwan removed Plaintiff from Cell #14 after Plaintiff's numerous requests, and placed Plaintiff in a holding cell, naked, handcuffed and shackled. Plaintiff alleges that Estwan then returned Plaintiff to Cell #14 and gave Plaintiff a T-shirt. At that time, Plaintiff noticed that all of his personal belongings and legal materials were gone even though Plaintiff had placed his belongings in a plastic bag before his cell-mate broke

the sprinkler. (*Id.*, ¶¶ 13-15.) Plaintiff alleges that he remained in Cell #14 with only a T-shirt, where the temperatures were below 30 degrees, and Plaintiff had no blankets, sheets, mattress, toothbrush, toilet paper, and the water in his cell was turned off ("dry cell"). This dry cell still had floodwater all over and hazardous paint chipping off the wall. Plaintiff remained in these conditions from August 29, 2012 through September 18, 2012. After Plaintiff was released from the dry cell, Defendant Estwan returned Plaintiff's belongings but some of his property was missing, including legal materials. (*Id.*, ¶¶ 16-20.)

Plaintiff further complains that Defendant Creighton has "harassed, intimidated and threatened Plaintiff with physical violence and death," since Plaintiff started filing inmate grievances. In particular, Plaintiff alleges that, on July 14, 2012, Defendant Creighton entered Plaintiff's cell with another officer named Gorski, and Creighton "took and destroyed" Plaintiff's personal property, including toiletries and stamped envelopes, in retaliation for Plaintiff exercising his First Amendment rights. (*Id.*, ¶¶ 23, 24.)

On September 3, 2012, Creighton allegedly awoke Plaintiff in the early morning, cuffed and shackled Plaintiff, and took him to a holding cell in "frigid cold temperature" coming from an air duct. Plaintiff was in a T-shirt and slippers. Plaintiff alleges that his legal materials were cluttered around the cell, some in urine inside the toilet and some on the floor in urine. Plaintiff further alleges that Creighton intimidated him with profane language and death threats if Plaintiff continued to file grievances. (*Id.* at ¶¶ 26, 27.)

Plaintiff next alleges that Defendant Hundley and the MCCC medical department denied Plaintiff medical treatment for his foot pains. Plaintiff alleges that he has gone several months without treatment for his "severe" foot pains. He filed several grievances regarding this denial of

3

medical treatment on December 13, 2011, December 16, 2011 and up to November 8, 2012. (*Id.*, ¶¶ 29-33.)

Plaintiff further alleges that Defendants Sergeant Miszak and Sergeant Walter have retaliated against Plaintiff for filing grievances. Specifically, Plaintiff alleges that, from November 15, 2012 to November 16, 2012, both Sgt. Miszak and Sgt. Walter strapped Plaintiff to a restraint chair for "unknown purposes." Plaintiff was strapped so tightly that his wrists, ankles and feet began to swell from poor blood circulation, and causing pain in Plaintiff's left knee. The nursing staff allegedly told Sgt. Miszak and Sgt. Walker to loosen the straps and allow Plaintiff to stretch because of Plaintiff's arthritis, which the officers did. However, after the nurses left, Defendants re-strapped Plaintiff more tightly. Plaintiff also was strapped in only his t-shirt in "extreme cold" conditions. After learning that Plaintiff has a weak left knee, Sgt. Miszak allegedly kicked, punched and slapped Plaintiff's knee for no reason, and warned Plaintiff that he will kill Plaintiff if Plaintiff tells anyone. (*Id.*, ¶¶ 35-42.)

Finally, Plaintiff alleges that, on November 15, 2012, after Plaintiff's cellmate broke the sprinkler head and fire alarm causing the cell to flood, Defendants C. Frascella and Sgt. Friel delayed removing Plaintiff from the flooded cell despite Plaintiff's pleas to get out, while watching the cell-mate. After the water was turned off, about 15 minutes later, Defendants stripped Plaintiff, gave him a t-shirt and boxers, handcuffed Plaintiff and escorted Plaintiff to an unknown area with a restraining chair. Plaintiff alleges that these Defendants saw the cell-mate commit the damage and the cell-mate confessed, but the Defendants "aggressively slammed Plaintiff down in the restraint chair," strapping Plaintiff tightly in only his t-shirt and boxers in "frigid cold temperature. (*Id.*, ¶¶ 44-47.)

4

Plaintiff seeks $5,000 in compensatory damages from each Defendant, and $15,000 in punitive damages from each Defendant. He also requests appointment of counsel. (*Id.*, "Relief" at ¶ 7.)

## II. STANDARDS FOR A SUA SPONTE DISMISSAL

Per the Prison Litigation Reform Act, Pub.L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis* or seeks redress against a governmental employee or entity. Specifically, the PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b). Accordingly, because Plaintiff is a prisoner proceeding *in forma pauperis* in this matter, this action is subject to *sua sponte* screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) and § 1915A.

"The legal standard for dismissing a complaint for failure to state a claim under [the PLRA] is the same as that for dismissing a complaint pursuant to a motion filed under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Aruanno v. Green*, 527 F. App'x 145, 147 (3d Cir. 2013) (discussing 28 U.S.C. § 1915(e)(2)(B)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (28 U.S.C. § 1915A(b)). According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, to prevent summary dismissal, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). Moreover,

5

while pro se pleadings are liberally construed, *Higgs v. Atty. Gen.*, 655 F.3d 333, 339 (3d Cir. 2011), "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted). Nonetheless, courts must be cognizant that the *Iqbal* standard "is not akin to a probability requirement." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted).

## III.  SECTION 1983 ACTIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). *See also Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

## IV.  DISCUSSION

A.  Access to Courts Claim

Plaintiff first asserts that Defendants Ellis and Rogers denied Plaintiff access to the law library and other legal materials for a year while Plaintiff allegedly was preparing for trial. Plaintiff makes no allegation of actual injury resulting from this alleged denial of access.

6

Plaintiff's claim against Defendants Ellis and Rogers with respect to access to the law library is construed as an access to courts claim. *See Collins v. ACJF*, No. 10–5481, 2011 WL 3273137, at *2 (D.N.J. July 29, 2011) (construing denial of access to law library claim as a claim for denial of access to the courts). "Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (citing *Lewis v. Casey*, 518 U.S. 343, 346 (1996)). "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other "remedy that may be awarded as recompense" for the lost claim other than in the present denial of access suit." *Id.* (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). Thus, to satisfy the requisite pleading requirements, "[t]he complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" *Id.* at 205–06 (footnote omitted) (citing *Christopher*, 536 U.S. at 416–17).

In *Monroe*, the Third Circuit determined that the complaint failed to state an access to courts claim upon which relief could be granted and stated the following:

> In this case, the defendants confiscated all of the plaintiffs' contraband and non-contraband legal materials, including their legal briefs, transcripts, notes of testimony, exhibits, copies of reference books, treatises, journals, and personal handwritten notes. In their initial pleadings, the plaintiffs' claim rested solely on the ground that the defendants confiscated their legal materials, contraband and non-contraband alike. That claim, on its face, was insufficient to state a claim under *Harbury*. So too were their subsequent amendments, which alleged that they lost the opportunity to pursue attacks of their convictions and civil rights claims but did not specify facts demonstrating that the claims were nonfrivolous. Nor did they maintain that they had no other remedy to compensate them for their lost claims. Even liberally construing their complaints as we must do for *pro se* litigants, they do not sufficiently allege that they have suffered an actual injury.

*6 536 F.3d at 206 (internal citation and footnote omitted).

7

Here, Plaintiff fails to describe the underlying arguable claims that he was prevented from raising due to the purported denial of law library access by Defendants Ellis and Rogers. He also fails to identify any harm resulting from this alleged denial of access. Therefore, pursuant to the pleading standards set forth in above, Plaintiff has failed to state an access to courts claim against this Defendant.[1] As it is possible that an amendment could cure this deficiency, the dismissal of this claim will be without prejudice.

B. Free Exercise of Religion Claim

Plaintiff also claims that Defendant Rogers did not allow Plaintiff to attend religious services from August 4, 2011 through November 7, 2012. The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const. amend. I. The Free Exercise Clause of the First Amendment prohibits prison officials from denying an inmate "a reasonable opportunity of pursuing his faith." *See Cruz v. Beto*, 405 U.S. 319, 322 & n. 2 (1972). Secular beliefs are not protected by the Free Exercise Clause, and "[o]nly beliefs which are both sincerely held and religious in nature are protected under the First Amendment." *Sutton v. Rasheed*, 323 F.3d 236, 251 (3d Cir. 2003) (citation and internal quotation marks omitted).

In this instance, Plaintiff does little more than make a conclusory statement that he was denied free religious exercise. He provides no facts sufficient to support his bald claim. Further, Plaintiff does not state that Rogers "'placed a substantial burden on the observation of a central religious belief or practice.'" *See Witcher v. Kerestes*, 410 F. App'x 529, 532 (3d Cir. 2011).

---

[1] Plaintiff also alleges that his legal materials were confiscated or destroyed by Defendants Sgt. Estwan and Sgt. Creighton. To the extent that he is alleging a denial of access to the courts claim against these Defendants, such claim likewise will be dismissed without prejudice because Plaintiff fails to describe the requisite actual injury to state such a claim.

8

Therefore, the Court will dismiss the complaint without prejudice at this time under *Iqbal*. *See Fowler*, 578 F.3d at 210. Plaintiff may seek leave to file an amended complaint to clarify this claim consistent with this ruling.

C. Denial of Medical Care Claim

Plaintiff next alleges that Defendant Hundley and the MCCC medical department denied medical treatment for Plaintiff's foot pains. He states that he filed several grievances for medical treatment in December 2011 through November 8, 2012. It appears from the Complaint that Plaintiff was a pretrial detainee during the relevant period when medical care allegedly was denied, because Plaintiff alleges that he was preparing for his trial during this time. Accordingly, as a pretrial detainee, Plaintiff's claim is examined under the Fourteenth Amendment.

To state a Fourteenth Amendment claim of inadequate medical attention, Plaintiff must allege that Defendant Hundley and the MCCC medical department acted with deliberate indifference to Plaintiff's serious medical needs. *See Lenhart v. Pennsylvania*, 528 F. App'x 111, 115 (3d Cir. 2013) (per curiam) (citing *Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243–44 (1983); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003)). The standard used to evaluate a Fourteenth Amendment claim for inadequate medical care is similar to that under the Eighth Amendment (though a due process "reasonableness" analysis would not change the result here).

For a denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Pierce v. Pitkins*, 520 F. App'x 64, 66 (3d Cir.2013) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)). Deliberate indifference requires proof that the official "knows of and disregards an

9

excessive risk to inmate health or safety." *Natale*, 318 F.3d at 582 (quoting *Farmer v.. Brennan*, 511 U.S. 825, 837 (1994)). The Third Circuit has found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Pierce, supra* (quoting *Rouse*, 182 F.3d at 197).

However, deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts will "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... (which) remains a question of sound professional judgment." *Pierce, supra* (citations omitted). Thus, allegations of negligent treatment or medical malpractice do not trigger constitutional protections. *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

The Third Circuit has also noted that deliberate indifference can be found "where the prison official persists in a course of treatment in the face of resultant pain and risk of permanent injury ." *See McCluskey v. Vincent*, 505 F. App'x 199, 202 (3d Cir. 2012) (internal quotation marks and citation omitted). "A medical need is serious if it 'has been diagnosed by a physician as requiring treatment,' or if it 'is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *See Mitchell v. Beard*, 492 F. App'x 230, 236 (3d Cir. 2012) (per curiam) (quoting *Atkinson v. Taylor*, 316 F.3d 257, 272–73 (3d Cir. 2003) (quoting *Monmouth Cnty. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987))).

Again, Plaintiff provides no factual support for his threadbare claim that he was denied medical treatment. He merely alleges the basic elements of such a claim in conclusory fashion without sufficient facts to support the assertion that he was denied treatment for "foot pain"

10

without medical justification. *See Iqbal*, 556 U.S. at 678 (stating that a complaint does not suffice to state a claim if it tenders naked assertions devoid of further factual enhancement) (citation omitted). Therefore, this denial of medical care claim will be dismissed without prejudice for failure to state a claim at this time.

D. Retaliation Claim

The Complaint further asserts that Defendants, Sgt. Creighton, Sgt. Miszak, and Sgt. Walker, retaliated against Plaintiff for exercising his First Amendment rights, namely, for filing grievances against the Defendants. Specifically, Plaintiff alleges that these Defendants harassed and threatened him with physical violence, took and destroyed his personal property, placed Plaintiff in a holding cell in freezing temperatures without sufficient clothing or blankets, and strapped Plaintiff to a restraint chair so tightly as to cause pain and loss of circulation in his extremities.

"A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Mack v. Yost*, 427 F. App'x 70, 72 (3d Cir. 2011) (per curiam) (quoting *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)).

The filing of administrative grievances, as alleged by Plaintiff, is protected conduct under the First Amendment, and thus, sufficient to support the first element of a retaliation claim. *See Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (stating that filing of prison grievances constitutes protected conduct failing within ambit of First Amendment). Moreover, Plaintiff's allegations of physical abuse, physical restraints under harsh conditions, threats of more physical violence against Plaintiff, and destruction of personal property may suffice in combination to

11

show "adverse action" by Defendants intended to deter Plaintiff from exercising his rights, the second requisite element of a retaliation claim.[2] *See Allah v. Seiverling*, 229 F.3d 220, 226 (3d Cir. 2000) (finding that plaintiff's allegations of cruel and unusual punishment were sufficient to state an adverse action); *Caldwell v. Luzerne Cnty. Corr. Facility Mgmt. Emps.*, 732 F.Supp.2d 458, 473 (M.D.Pa. 2010) (finding that plaintiff sufficiently alleged adverse action in retaliation claim where he alleged that defendants participated in and subjected him to unconstitutional conditions of confinement); *Jean–Laurent v. Lane*, No. 11–186, 2013 WL 600213, at *10 (N.D.N.Y. Jan.24, 2013) (citation omitted); report and recommendation adopted by, 2013 WL 599893 (N.D.N.Y. Feb.15, 2013) (finding that confiscation of prisoner's legal work could constitute adverse action); *Gonzales v. Carpenter*, No. 08–629, 2011 WL 768990, at *6 (N.D.N.Y. Jan. 3, 2011) ("[T]heft, confiscation, or destruction of an inmate's legal documents can constitute 'adverse action' for the purposes of a retaliation claim.") (citations omitted), report and recommendation adopted by, 2011 WL 767546 (N.D.N.Y. Feb.25, 2011).

With respect to alleging facts with respect to the third element of a retaliation claim, Plaintiff must allege that the constitutionally protected conduct was a substantial or motivating factor for the adverse response. *See Velasquez v. Diguglielmo*, 516 F. App'x 91, 95 (3d Cir. 2013) (per curiam) (citing *Cater v. McGrady*, 292 F.3d 152, 157, 158 (3d Cir. 2002); *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)). Furthermore:

> To establish the requisite causal connection for a retaliation claim predicated on the First Amendment, the plaintiff (here, a prisoner) usually has to prove one of two things: (1) an unusually suggestive time proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with timing to establish a causal link. *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). If

---

[2] However, allegations that these Defendants verbally harassed and threatened Plaintiff would not alone be sufficient to show adverse action to support a retaliation claim. *See Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012).

neither of these showings is made, then the plaintiff must show that, from the evidence in the record as a whole, the trier of fact should infer causation." *Id.*

*DeFranco v. Wolfe*, 387 F. App'x 147, 154 (3d Cir. 2010). While temporal proximity is relevant in First Amendment retaliation cases, *see Ambrose v. Twp. of Robinson, Pa.*, 303 F.3d 488, 494 (3d Cir. 2002) (citing *Rauser*, 241 F.3d at 334), "'[t]he mere passage of time is not legally conclusive proof against retaliation.'" *Marra v. Phila. Housing Auth.*, 497 F.3d 286, 302 (3d Cir. 2007) (quoting *Robinson v. Southeastern Pa. Transp. Auth.*, 982 F.2d 892, 894 (3d Cir. 1993)) (other citation omitted).

Here, Plaintiff alleges that the retaliatory conduct by these two Defendants occurred shortly after Plaintiff filed grievances. Moreover, he expressly claims that Defendants told him not to file any grievances or they would kill him. These allegations, if true, may show that the filing of grievances by Plaintiff was the motivating factor for the adverse action taken by Defendants against Plaintiff. Accordingly, Plaintiff's retaliation claim shall proceed at this time.

E. Cruel and Unusual Punishment Claim

Next, Plaintiff alleges that Defendants Sgt. Estwan, Sgt. Creighton, Sgt. Miszak, Sgt. Walter, Sgt. Friel and C. Frascella inflicted cruel and unusual punishment against Plaintiff without justification for filing grievances. Plaintiff's cruel and unusual punishment claim is analyzed under the Due Process Clause because Plaintiff appears to be a pre-trial detainee during the relevant time period. *See Tapp v. Proto*, 404 F. App'x 563, 566 (3d Cir. 2010) (per curiam) (noting that plaintiff's claims that arise when he is a pretrial detainee are prosecuted under the Due Process Clause). A pre-trial detainee is entitled to at least those constitutional rights that are enjoyed by convicted prisoners. *See Bell v. Wolfish*, 441 U.S. 520, 545 (1979). To state a claim for cruel and unusual punishment, Plaintiff must allege both an objective and a subjective

13

component. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *see also Counterman v. Warren Cnty. Corr. Facility*, 176 F. App'x 234, 238 (3d Cir. 2006). Only "extreme deprivations" are sufficient to make out an Eighth Amendment claim. *See Hudson v. McMillan*, 503 U.S. 1, 9 (1992). As to the objective component, only those deprivations denying the "minimal civilized measure of life's necessities," which includes food, clothing, shelter, sanitation, medical care and personality safety qualify as sufficiently grave to form the basis for an Eighth Amendment violation. *See Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 832, 835 (1994)). As to the subjective component, Plaintiff must show that the prison official acted with deliberate indifference to the prisoner's health or safety. *See Wilson*, 501 U.S. at 298–99.

Here, Plaintiff alleges that Sgt. Estwan had Plaintiff stripped naked, then handcuffed and shackled him, and placed Plaintiff in a holding cell that was below thirty degrees, without blankets, sheets, mattress, toilet paper, toothbrush and running water from August 29, 2012 through September 18, 2012. Plaintiff was given only a t-shirt during his confinement in the holding cell. Plaintiff also alleges that Sgt. Creighton placed Plaintiff in a holding cell on September 3, 2012 under the same conditions. Finally, Plaintiff alleges that Defendants Sgt. Miszak, Sgt. Walter, Sgt. Friel and C. Frascella stripped Plaintiff, gave him a t-shirt and boxers, placed him in a restraint in "frigid cold temperatures," and strapped Plaintiff to the restraint so tightly that it cut circulation in Plaintiff's wrists, ankles and feet, causing pain. These claims of cruel and unusual punishment may be construed as alleging unconstitutional conditions of confinement and use of excessive force without justification or legitimate purpose.

First, in the excessive force context, the Third Circuit has applied the standard enunciated in Eighth Amendment cases to excessive force claims by pretrial detainees. *See Williams v.*

14

*Guard Bryant Fields*, No. 11–3646, 2013 WL 4498670, at \*3 n. 4 (3d Cir. Aug. 23, 2013); *Drumgo v. Brown*, 525 F. App'x 125, 128 (3d Cir. 2013) (per curiam) (applying Eighth Amendment cruel and unusual punishment standard to a pretrial detainee's excessive force claim arising in the context of a prison disturbance). The applicable test under the Eighth Amendment is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Relevant factors include: (1) the need for force, (2) the relationship between the need and the amount of force used, (3) the extent of injury, (4) the extent of the threat to safety as reasonably perceived by officials, and (5) "'any efforts made to temper the severity of a forceful response.'" *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2005) (quoting *Whitley v. Albers*, 475 U.S. 312, 321, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)).

Outside the context of a prison disturbance, however, the Third Circuit has not yet specifically addressed the contours of an excessive force claim by a pre-trial detainee. *Carson v. Mulvihill*, 488 F. App'x 554, 562 (3d Cir. 2012). Generally, courts assessing the treatment of pretrial detainees look to whether the treatment of the prisoner is: (1) rationally related to a legitimate non-punitive governmental purpose; and (2) whether the treatment of the prisoner appears excessive in relation to that purpose. *Id.* at 560 (3d Cir. 2012) (citing to *Bell v. Wolfish*, 441 U.S. 520 (1979)). This Court notes that even this more generalized due process "reasonableness" analysis would not change the result here.

In this case, Plaintiff alleges that he was strapped to a restraint chair so tightly as to cause pain and loss of circulation for no other reason than as punishment or retaliation for filing grievances. Assuming that this allegation is true, such action was plainly excessive and unreasonable if it was done for this purpose. Even if the restraint was in response to a prison

15

disturbance, *i.e.*, the flooding of Plaintiff's cell to create a commotion, the amount of force used by Defendants and the need for such force would appear excessive under the circumstances as alleged by Plaintiff.

Likewise, a Fourteenth Amendment conditions of confinement claim applies this same two-pronged "reasonableness" analysis under *Bell*, 441 U.S. at 561, when examining whether the conditions of confinement amount to punishment of the detainee.  *See Hubbard v. Taylor*, 399 F.3d 150, 159 (3d Cir.2005).  "In assessing whether the conditions are reasonably related to the assigned purposes, [a court] must further inquire as to whether these conditions cause [inmates] to endure [such] genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them."  *Hubbard*, 399 F.3d at 159 (quoting *Union County Jail Inmates v. DiBuono*, 713 F.2d 984, 992 (3d Cir. 1983)).  In this case, the confinement of Plaintiff for 21 days under such conditions as set forth above, if true, would appear to be sufficient to state a claim at this time.

Therefore, given the allegations set forth by Plaintiff, and as discussed above, this Court finds that Plaintiff has alleged facts sufficient to allow these claims of cruel and unusual punishment to proceed at this time against Defendants, Sgt. Estwan, Sgt. Creighton, Sgt. Miszak, Sgt. Walter, Sgt. Friel and C. Frascella.

F.  Destruction of Personal Property Claim

Finally, Plaintiff appears to allege that Defendants Sgt. Estwan  and Sgt. Creighton are liable to him because they confiscated and destroyed his personal property.  This Court notes:

> An unauthorized deprivation of property by a state actor, whether intentional or negligent, does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available. *Hudson v. Palmer*, 468 U.S. 517, 530–36, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Parratt v. Taylor*, 451 U.S. 527, 543–44, 101 S.Ct. 1908, 68 L.Ed.2d

420 (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). In *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435–36, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), the Supreme Court explained, however, that post-deprivation remedies do not satisfy the Due Process Clause if the deprivation of property is accomplished pursuant to established state procedure rather than through random, unauthorized action.

*Stokes v. Lanigan*, No. 12–1478, 2012 WL 4662487, at *4 (D.N.J. Oct.2, 2012). New Jersey provides for a post-deprivation remedy for unauthorized deprivation of property by public employees through the New Jersey Tort Claims Act, N.J. Stat. Ann.. § 59:1–1, *et seq. See Georges v. Ricci*, No. 07–5576, 2007 WL 4292378, at *8 (D.N.J. Dec.4, 2007) (stating that the New Jersey Tort Claims Act "provides an adequate post-deprivation remedy to person, including inmates such as Plaintiff, who believe they were wrongfully deprived of property at the hands of prison officials.") (citations omitted).

In this case, Plaintiff does not allege that the actions of these two Defendants with respect to his personal property were the result of an established state procedure. Accordingly, Plaintiff fails to state a claim against Defendants, Sgt. Estwan and Sgt. Creighton, for depriving him of his personal property. *Accord Peterson v. Holmes*, No. 12–865, 2012 WL 5451435, at *4–5 (D.N.J. Nov.7, 2012) (finding plaintiff failed to state deprivation of property claim where plaintiff alleged no facts that defendants deprived him of property pursuant to an established state procedure); *Stokes*, 2012 WL 4662487, at *4 (same). Therefore, this claim is dismissed with prejudice for failure to state a cognizable claim for relief.

## V. CONCLUSION

For the reasons set forth above, Plaintiff's claims asserting denial of access to the courts, denial of free exercise of religion, and denial of medical care, are dismissed without prejudice, as against all named Defendants, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b0(1), for

failure to state a claim at this time. Further, Plaintiff's claim alleging destruction of personal property in violation of his Fourteenth Amendment rights is dismissed with prejudice, in its entirety, as against all named Defendants, pursuant to 28 U.S.C. §§ 1915(e)(2)(b)(ii) and 1915A(b)(1), for failure to state a cognizable claim under 42 U.S.C. § 1983. Finally, Plaintiff's claims alleging retaliation and cruel and unusual punishment by Defendants, Sgt. Estwan, Sgt. Creighton, Sgt. Miszak, Sgt. Walter, Sgt. Friel and C. Frascella, are allowed to proceed at this time. An appropriate order follows.

_____
MICHAEL A. SHIPP
United States District Judge

Dated: 5/29/14

18